# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARKS SPORTS & ENTERTAINMENT LLC,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL TRANSIT ADMINISTRATION, et al.,<br><br>Defendants. | Case No. 18-cv-04060-LHK (SVK)<br><br>**ORDER ON PLAINTIFF SHARKS SPORTS & ENTERTAINMENT LLC'S MOTION TO COMPEL SUPPLEMENTATION AND COMPLETION OF THE ADMINISTRATIVE RECORD**<br><br>Re: Dkt. No. 68 |

Plaintiff Sharks Sports & Entertainment LLC ("SSE") is the parent company of subsidiaries that own and operate the San Jose Sharks professional hockey team and operate the SAP Center ("Arena") in downtown San Jose, where Sharks games and other events take place. The Arena is located near Diridon Station ("Diridon"), which is a key station in a planned "BART Silicon Valley Phase II Extension Project" (the "Project"), which plans to interconnect several transit modes including BART, Caltrain, the Valley Transportation ("VTA") bus and light rail systems, and other forms of transportation. In this case, SSE alleges that Defendant Federal Transit Administration ("FTA") and associated individual defendants violated the National Environmental Protection Act ("NEPA"), 42 U.S.C. § 4231, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, in failing to properly evaluate the environmental impacts of the Project. *See* Dkt. 1 (Complaint) at ¶¶ 1-15. A particular focus of SSE's challenge is FTA's analysis of parking requirements at Diridon. *See id.* at ¶¶ 63-80. SSE asks the Court to declare invalid the Final Supplemental Environmental Impact Statement/Subsequent Environmental Impact Report and Draft Section 4(f) Evaluation, dated February 2018 ("SEIS/SEIR"), and vacate the Record of Decision, dated June 4, 2018 ("ROD"). *See id.* at Prayer for Relief.

Defendants prepared and lodged an Administrative Record with the Court on

September 23, 2019. Dkt. 62. Before the Court is SSE's motion to compel supplementation and completion of the administrative record. Dkt. 68. SSE seeks to complete the administrative record with documents that it contends FTA considered, directly or indirectly, in developing the SEIS/SEIR and ROD. *See* Dkt. 73 at 10-12. SSE also seeks to supplement the administrative record with certain extra-record information that it contends the District Judge should consider in evaluating the merits of the case. *Id.*

Defendants oppose the motion on the grounds that these items are not properly part of the administrative record because FTA did not consider them, either directly or indirectly, when developing the SEIS/SEIR or the ROD. Dkt. 71. Defendants also argue that the limited exceptions for supplementation of the record with extra-record evidence do not apply. *Id.*

Judge Lucy H. Koh referred this motion to the undersigned discovery referral judge. Dkt. 20. The Court held a hearing on January 21, 2020. Having considered the briefs, arguments at the hearing, and the relevant legal authority, the Court GRANTS IN PART, DENIES IN PART, and REQUIRES THE PARTIES TO MEET AND CONFER ON LIMITED REMAINING ISSUES PRESENTED BY SSE's motion to compel completion and/or supplementation of the administrative record for the reasons discussed below.

## I.    LEGAL STANDARD

### A.    Completion of the administrative record

"Generally, judicial review of agency action is limited to review of the record on which the administrative decision was based." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). Courts, however, may grant a motion to complete the administrative record where the agency has not submitted the "whole" record. *See* 5 U.S.C. § 706 ("the court shall review the whole record or those parts of it cited by a party"). The "whole" record "consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson*, 885 F.2d at 555 (citation omitted) (emphasis in original); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (holding that courts must review "the full administrative record that was before the [agency] at the time [it] made [the] decision"). An agency may not exclude information it considered on the

2

grounds that it did not rely on that information. *People ex rel. Lockyer v. U.S. Dep't of Ag.*, No. C05-03508 EDL, 2006 WL708914, at *2 (N.D. Cal. Mar. 16, 2006).

The agency's designation of the record is accorded a strong presumption of regularity and completeness, which the plaintiff must overcome with "clear evidence." *Gill v. Dep't of Justice*, No. 14-cv-03120-RS (KAW), 2015 WL 9258075, at *5 (N.D. Cal. Dec. 18, 2015). To meet this standard, the plaintiff must identify the allegedly omitted materials with sufficient specificity and "identify reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record." *Id.* (internal quotation marks and citations omitted). Several courts in this District have held that the plaintiff can rebut the presumption of completeness by showing that the agency applied the wrong standard in compiling the record, including where the face of the record certification provided by the agency reveals an error. *See, e.g., id.* at *6 (holding presumption of completeness rebutted where agency certified that the record contained all information "considered in the development" of the agency action but did not state that all materials directly or indirectly considered by the agency were included); *Lockyer*, 2006 WL 708914, at *3 (planning specialist's certification that the record included only materials that agency officials considered or on which they relied did not "provide sufficient assurance" that agency included in the record documents it indirectly considered); *see generally J.L. v. Cissna*, No. 18-cv-04914-NC, 2019 WL 2223803, at *3 (N.D. Cal. May 22, 2019) (holding that "[o]n the face of the certification, the [administrative record] is incomplete" because certification identified wrong agency action). District courts elsewhere in the Ninth Circuit have reached similar conclusions. *See Winnemem Wintu Tribe*, No. 2:09-cv-01072-KJM-KJN, 2014 WL 3689699, at *11 (E.D. Cal. July 24, 2014) (ordering defendants to supplement the administrative record where they had limited the record to "documents and materials relevant to the specific agency actions that are at issue in th[e] litigation[,]" not all documents directly or indirectly considered by the agency); *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, No. CV01-640-RE, 2005 U.S. Dist. LEXIS 16655, at *10 (D. Or. Mar. 3, 2005) (holding that statements in declaration of agency official that strongly suggested that materials considered by the agency, although not forming the basis for the agency's determinations, had been excluded from the record "are sufficient, standing

3

United States District Court
Northern District of California

alone, to rebut the presumption of irregularity"); *see generally Trout Unlimited v. Lohn*, No. C05-1128C, 2006 WL 1207901, at *3 (W.D. Wash. May 4, 2006) (defendants' concession that a narrow internal directive guided the compilation of the administrative record sufficed as a prima facie showing of an incomplete record).[1] The plaintiff need not show bad faith or improper motive to rebut the presumption of completeness. *Lockyer*, 2006 WL 708914, at *2.

### B. Supplementation of the record

Courts may review extra-record material when: (1) it is necessary to determine whether the agency has considered all relevant factors and explained its decision; (2) the agency has relied on documents not in the record; (3) supplementing the record is necessary to explain technical terms or complex subject matter; or (4) plaintiffs make a showing of bad faith. *City of Las Vegas v. F.A.A.*, 570 F.3d 1109, 1116 (9th Cir. 2009). The Ninth Circuit has cautioned that these exceptions are to be "narrowly construed and applied" to ensure that they do not undermine the general rule limiting review to the record that was before the agency. *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2004). The party seeking admission of extra-record material "initially bears the burden of demonstrating that a relevant exception applies." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014).

## II. DISCUSSION

### A. Administrative Record Prepared by Defendants

Although the agency bears the initial responsibility to assemble the administrative record, the record "is not necessarily those documents that the *agency* has compiled and submitted as 'the' administrative record." *Thompson*, 85 F.2d at 555 (internal quotation marks and citations omitted) (emphasis in original). As discussed above, although an agency's certification of the administrative record is entitled to a strong presumption of regularity, evidence that the agency did not apply the proper standard in compiling the administrative record may justify a finding that the

---

[1] The Court notes that district courts in some other circuits have held that a "purportedly inadequately worded certification—or even the complete absence of a certification—" does not "defeat[ ] the presumption of regularity to which the administrative record is entitled....". *Outdoor Amusement Business Assn., Inc. v. Dep't of Homeland Security*, No. ELH-16-1015, 2017 WL 3189446, at *9 (D. Md. Jul. 27, 2017) (quoting *Banner Health v. Sebelius*, 945 F. Supp. 2d 1, 18 (D.D.C. 2013)).

4

presumption of completeness is rebutted. *See Gill*, 2015 U.S. Dist. LEXIS 170347, at *19-20.

Here, FTA assembled the administrative record and lodged it with the Court along with a certification signed by Raymond Tellis, who has served as Regional Administrator for FTA Region IX since February 2019. Dkt. 62-1 ¶ 1. In the certification, Mr. Tillis states that he oversaw the completion of the administrative record. *Id.* ¶ 4. He states that "[t]he Administrative Record for the SEIS and ROD contains documents that were ***relied on*** for the SEIS and ROD," other than privileged documents. *Id.* ¶ 5 (emphasis added). Mr. Tillis also states that to the best of his knowledge, "the Administrative Record for the SEIS and ROD contains all the documents upon which FTA ***relied directly or indirectly*** in issuing the SEIS and ROD." *Id.* ¶ 7 (emphasis added).

The certification submitted by FTA suggests that Mr. Tellis and his staff used the incorrect standard in identifying materials to include in the administrative record. As explained above, the administrative record must include all documents and materials directly or indirectly ***considered***, and the agency may not properly exclude information on the grounds that it did not ***rely*** on that information. *Thompson*, 885 F.2d at 555; *Lockyer*, 2006 WL 708914, at *2. By limiting the administrative record to materials that FTA relied upon, rather than including all materials directly or indirectly considered, the agency used the wrong criteria. As a result, the presumption of completeness is overcome. *See Gill*, 2015 WL 9258075, at *5; *Lockyer*, 2006 WL 708914, at *3.

**B.     Materials SSE Seeks to Include in the Administrative Record**

Together with its motion to supplement/complete the administrative record, SSE submitted 47 documents it seeks to include in the administrative record, on the grounds that those documents are necessary to complete the administrative record and/or that they meet the standard for supplementation of the administrative record. *See* Kraus Decl. (Dkt. 68-1) ¶¶ 1-46 and Exs. A-SS thereto. In its reply brief, SSE categorizes these documents; the Court discusses each category below.

////

////

////

5

### 1. Category 1: VTA emails

The first category of documents SSE seeks to add to the administrative record Exhibits F, I through N, P, R, T through II, and LL through OO to the Kraus Declaration, which are VTA emails produced "as part of the State Public Records Request and meet and confer process to prepare the CEQA AR [Administrative Record]." Dkt. 73 at 10-11.

#### a. Relationship of FTA and VTA

SSE argues that the VTA documents in Category 1 are properly part of the administrative record because VTA and FTA were joint lead agencies in preparing the SEIS/SEIR. Dkt. 68 at 13. SSE relies on 23 C.F.R. § 771.109(c)(2), which states that "[a]ny State or local government entity applicant that is or is expected to be a direct recipient of funds under title 23, U.S. Code or chapter 53 of title 49, U.S. Code for the action, or is or is expected to be a direct recipient of financial assistance for which [the Federal Railroad Administration] is responsible (e.g., Subtitle V of Title 49 U.S. Code) must serve as a joint lead agency with the Administration in accordance with 23 U.S.C. 139 and may prepare environmental review documents if the Administration furnishes guidance and independently evaluates the documents." According to SSE, "[a]s joint lead agency what is known to VTA is attributable to FTA." *Id.* (emphasis in original).

Defendants dispute the role of VTA. *See* Dkt. 71 at 7-11. Defendants argue that the regulation cited by SSE (23 C.F.R. § 771.109(c)(2)) applies only to decisions made on or after November 28, 2018, which is after the final ROD in this case. *Id.* at 8-9. Defendants also argue that neither that regulation nor the corresponding statute, 23 U.S.C. § 139, defines the "lead agency" as the Federal decision maker for purposes of APA review. *Id.* at 8. Instead, according to Defendants, FTA is the federal lead agency for preparation of the EIS. *Id.* Defendants also argue that even if VTA were a joint lead agency, that status does not justify "attribut[ing] to the federal agency everything that is known to the local agency." *Id.; see also id.* at 9 (arguing that "[t]he cases cited by Plaintiff likewise fail to support its claim that FTA is responsible for everything done and said by VTA during project development").

FTA's argument that 23 C.F.R. § 771.109(c)(2) did not take effect until after the ROD in this case is not well taken. As discussed by SSE in its reply brief (Dkt. 73 at 5-6), although the

6

current version of the regulation took effect in November 2018, after the ROD in this case issued, the version in effect during the relevant time period contained similar language about joint lead agencies. See 23 C.F.R. § 771.109(c)(2) (version in effect from Feb. 7, 2013 to Nov. 27, 2018) ("Any applicant that is a State or local governmental entity that is, or is expected to be, a direct recipient of funds under title 23, U.S. Code, or chapter 53 of title 49 U.S. Code, for the action shall serve as a joint lead agency with the Administration in accordance with 23 U.S.C. 139, and may prepare environmental review documents if the Administration furnishes guidance and independently evaluates the documents."). Defendants fail to establish that VTA would not have qualified as a "joint lead agency" under the earlier version of the regulation.

Moreover, there is also evidence that FTA worked with VTA in preparation of the SEIS/SEIR under review in this case. For example, the SEIS/SEIR was signed by both FTA and VTA officials and states that it was prepared by both agencies. *See* Dkt. 73 at 6 (citing AR 20630). In addition, both FTA and VTA witnesses testified in deposition that the agencies worked together on the SEIS/SEIR. Tom Fitzwater, the former manager of Environmental Programs and Resource Management for VTA, testified that in preparing the SEIS/SEIR, "VTA would ensure that it meets the CEQA requirements [and] FTA would ensure that it met the NEPA requirements." Dkt. 68-11 at 9:9-16, 29:24-30:4. FTA witness Mary Nguyen testified that in the event a project sponsor pursues federal funding for a transit project, FTA becomes involved in the environmental process to meet the requirements of NEPA. Dkt. 68-6 at 103:8-17. Ms. Nguyen testified that she reviewed parts of the draft SEIS/SEIR that dealt with traffic and parking and provided comments to VTA, and FTA personnel spoke to VTA about a parking inventory VTA planned to prepare. *Id.* at 39:1-15, 146:17-147:25; 150:24-151:5.

### b. Indirect consideration

Although SSE has established that FTA and VTA worked together in some respects on the SEIS/SEIR, that does not answer the key question in deciding whether VTA documents should be included in a complete administrative record, which is whether the fact that VTA had the emails in Category 1 during preparation of the SEIS/SEIR means those documents were "directly or indirectly considered" by FTA. SSE has presented no evidence that the emails in Category 1 were

1    directly considered by FTA.  Accordingly, the Court must determine whether they were indirectly
2    considered by the federal agency.
3          The Ninth Circuit "ha[s] not yet clarified the exact scope of 'indirectly considered'." *In re*
4    *United States*, 875 F.3d 1200, 1207 (9th Cir. 2017), *cert. granted and judgment vacated on other*
5    *grounds*, 137 S. Ct. 443 (2017).  Courts have rejected attempts to limit administrative records to
6    those documents that were before an agency's senior decisionmakers.  For example, a court in this
7    District rejected an argument, apparently made in the context of a motion to include internal
8    agency memoranda and similar documents, that "only those documents that reached [the agency's]
9    most senior administrators were in fact 'considered.'"  *Nat. Res. Def. Council v. Gutierrez*, No. C
10   01-0421 JL, 2008 WL 11358008, at *6 (N.D. Cal. Jan. 14, 2008).  Courts elsewhere have required
11   an agency to include in the administrative record the work and recommendations of subordinates
12   within the agency.  *See, e.g., Wildearth Guardians v. U.S. Forest Serv.*, 713 F. Supp. 2d 1243,
13   1256 (D. Colo. 2010).  The court in *Wildearth Guardians* explained that "a party moving to
14   complete the record must show with clear evidence the context in which materials were considered
15   by decision makers in the relevant decision making process" and, for example, a study "so heavily
16   relied on in the recommendations [of subordinates] that the decision maker constructively
17   considered it" should be included in the record even if there is no evidence that the decision maker
18   read the study.  *Id.*

      Although these and similar cases provide some guidance as to which internal agency documents should be included in an administrative record, the issue in this case is whether and under what circumstances a *different* agency's documents become part of the complete administrative record.  SSE cites several cases in support of its argument that internal VTA documents should be included in FTA's administrative record in this case.  In one of the cases cited in SSE's motion, *Audubon Soc'y v. United States Army Corps of Engineers,* No. 3:15-cv-0665-SI, 2015 WL 13649299 (D. Or. May 5, 2015), the court ordered supplementation of the record with "all documents in possession, custody, or control of the [defendant] agencies, including [items] prepared by agency personnel or outside personnel or entities" on certain issues, finding that such information "likely will provide relevant background information … and also

8

may provide information necessary for the Court to determine whether the agencies considered all relevant factors in reaching their decisions. *Id.* at *4. However, the court did not discuss in detail how and why it determined that records of "outside personnel or entities" should be added to the administrative record. Other cases cited by SSE that involve multiple agencies discuss the administrative record only incidentally and do not provide guidance on the issue of whether and under what circumstances one agency's records should be made a part of the administrative record in an action against one of its joint agencies. For example, *Davis v. Mineta*, 302 F.3d 1104 (10th Cir. 2002) and *Forest Guardians v. U.S. Fish & Wildlife Serv.*, 611 F.3d 692 (10th Cir. 2010), involved the issue of whether a contractor's predetermination was attributable to the contracting agency, as SSE's description of the cases acknowledges. *See* Dkt. 68 at 13-14. In addition, SSE fails to provide case law support for its final argument that "FTA is in an agency relationship with VTA and FTA is imputed to have knowledge of" VTA documents, and the Court rejects SSE's request to complete or supplement the record based on an alleged "standard agency law analysis." *See* Dkt. 73 at 8-9.

More relevant to SSE's argument is a case cited in its reply brief, *Southeast Alaska Conservation Council v. Federal Highway Admin.*, No. 1:06-cv-00009 JWS, 2007 WL 2988013 (D. Alaska Oct. 10, 2007), which discusses in greater detail the scope of the administrative record in a multi-agency context.[2] *Southeast Alaska* involved an APA challenge to a Record of Decision prepared by the Federal Highway Administration ("FHWA") approving a proposed highway that would connect the end of an existing highway to a new ferry terminal. *Id.* at *1. The Record of Decision at issue "completed the FHWA's review under the National Environmental Policy Act ('NEPA') and was based on a series of environmental documents prepared by the Alaska

---

[2] At the hearing, in response to the discussion of *Southeast Alaska,* FTA directed the Court's attention to *Golden Gate Salmon v. Ross,* No. 1:17-cv-01172 LJO-EPG, 2018 WL 3129849 (E.D. Cal. June 22, 2018). However, the central issue in *Golden Gate Salmon* was whether a request for supplementation of an administrative record can be based solely on an agency's consideration of the requested documents in connection with an earlier, related decision. *Id.* at *9. The issue in this case is different because SSE is requesting to complete the record with VTA documents concerning the SEIS/SEIR report that is being challenged in this case.

9

[Department of Transportation and Public Facilities ('Alaska DOT and PF')," including a draft, supplemental draft, and final environmental impact statements ("DEIS," "SDEIS," and "FEIS"). *Id.* The plaintiffs in that case sought to complete the administrative record with several categories of documents, including "a large number of documents that are contained in the Alaska DOT & PF's Special Projects File and were used by DOT & PF in preparing the DEIS, SDEIS, and FEIS for the Project." *Id.* at \*3. The plaintiffs argued that by approving these EIS documents and by signing a Record of Decision authorizing construction of the project, "FHWA indirectly considered documents used by Alaska [DOT & PF] in evaluating the potential impacts of, and choosing among, the alternatives." *Id.* The court rejected FHWA's argument that the state agency documents should not be added to the administrative record because they were not before the FHWA because FHWA acknowledged that its staff "participated extensively in reviewing and commenting on" the documents at issue. *Id.* However, the court denied the plaintiff's "generalized request to include all documents considered by the Alaska DOT & PF in preparing the DEIS, SDEIS, and FEIS." *Id*. The court therefore required a factual showing that state agency documents were at least indirectly considered by the federal agency; the fact that the state agency considered them was not by itself enough.

In a case cited by neither party, a district court denied a motion to supplement an administrative record in *City of Duluth v. Jewell*, 968 F. Supp. 2d 281 (D.D.C. 2013), which involved a challenge to a decision of the Department of Interior ("DOI") to cancel a casino property business lease with the Fond du Lac Band of Lake Superior Chippewa Indians. The plaintiff sought to supplement the administrative record with the entire administrative record of the National Indian Gaming Council ("NICG") for a Notice of Violation ("NOV"), which the plaintiff contended was the only basis for the DOI's action terminating the lease. The plaintiff argued that the DOI "clearly indirectly relied upon the record of decision before the NIGC in making its decision." *Id.* at 289. The court rejected the plaintiff's argument, noting that the NOV, which "explained in detail the NIGC's decision," was already included in the administrative record, and "there is no evidence that the [DOI] considered the record of material underlying the NOV." *Id.* at 290.

10

#### c. Analysis

This case, like *Southeast Alaska Conservation Council* and *City of Duluth*, involves an effort by the plaintiff to include in a federal agency's administrative record documents that were before a different agency. As discussed above, the SEIS/SEIR is co-signed by FTA and VTA and there is some deposition testimony that the two agencies communicated about the SEIS/SEIR. However, this evidence falls short of demonstrating "reasonable, non-speculative grounds for the belief" that FTA indirectly considered the Category 1 documents in developing the SEIS/SEIR or ROD. SSE has presented no evidence that the particular VTA emails in Category 1 were sent to anyone at FTA or otherwise before FTA for its consideration, indirect or otherwise.

SSE's argument that the Category 1 documents should be part of the administrative record is largely premised on the single fact that VTA produced the documents as part of the process of assembling the administrative record in the CEQA action in state court.[3] However, SSE has presented only attorney argument regarding the state court proceedings, urging that VTA produced numerous documents "as part of the State Public Records Request and meet and confer process to prepare the CEQA AR." Dkt. 73 at 10-11. As explained further at the hearing, SSE has been meeting and conferring with VTA in the state proceedings to agree on the contents of the state administrative record. Also at the hearing, SSE pointed to California Public Resources Code § 21167.6(e), which identifies the contents of the administrative record in a CEQA action. But SSE has presented no evidence to this Court as to the facts behind the VTA's production in state court, such as the scope of the document requests and what VTA agreed to produce.

Even accepting its attorneys' arguments at face value, SSE's argument falls short of demonstrating that the Category 1 documents meet the requirements for inclusion in the federal administrative record. None of the categories of documents identified in Public Resources Code § 21167.6(e) correspond directly to the federal administrative record standard of materials "considered, directly or indirectly." In addition, and more significantly, the state court record is

---

[3] According to SSE, it has a pending CEQA action against VTA in Santa Clara County Superior Court, alleging similar concerns under CEQA as SSE alleges in this case under NEPA, as well as a state Public Records Act request that has not yet matured into formal litigation. Dkt. 68 at 2.

11

being prepared in cooperation with VTA and from the perspective of what materials were before that agency; it does not concern what materials were considered, directly or indirectly, by FTA. In sum, there are no facts linking VTA's production in the state proceedings to FTA. The fact that the documents were considered by VTA, by itself, is not enough. *See Southeast Alaska*, 2007 WL 2988013, at *3; *City of Duluth,* 968 F. Supp. 2d at 290.

The Court concludes that the SSE has failed to establish that the documents in Category 1 are documents that FTA considered, directly or indirectly. In addition, to the extent SSE argues that the Category 1 documents are proper extra-record material, the Court concludes that SSE has failed to demonstrate that those materials fall within the narrow supplementation exceptions. Specifically, SSE has not demonstrated that (1) the VTA emails in Category 1 materials are necessary to determine whether FTA considered all relevant factors, (2) FTA relied on the Category 1 documents, (3) supplementing the record with the Category 1 materials is necessary to explain technical terms or complex subject matter, or (4) supplementation of the record is appropriate due to FTA's bad faith. Accordingly, the Court DENIES SSE's motion to complete or supplement the administrative record with the documents in Category 1.

### 2. Category 2: PAB Minutes

The second category of documents that SSE seeks to add to the administrative record are Exhibits A and O to the Kraus Declaration, which are "PAB Minutes and memos" that are "on the VTA website as part of the public record" and "were produced pursuant to the ongoing VTA production related to the CEQA AR and public records request." Dkt. 73 at 11.

At the hearing, SSE explained that Exhibit A is a document it located on the VTA's website. SSE stated that this document is probably eligible for judicial notice but it is taking a "belt and suspenders" approach of also seeking inclusion of the document in the administrative record. SSE has not asked this Court to take judicial notice of Exhibit A, and this Court does not opine on whether such notice would be proper. SSE's statement that Exhibit A was found on the VTA's website is not evidence that FTA considered the document, either directly or indirectly. Moreover, SSE has failed to meet the standard for supplementing the record with this document. As a result, the Court DENIES SSE's request to include Exhibit A in the administrative record.

12

Exhibit O is another set of PAB minutes, which was produced by VTA as part of the state court administrative record process discussed above. For the same reasons discussed with respect to Category 1 above, the Court DENIES SSE's request to complete or supplement the record with Exhibit O because SSE (1) has failed to demonstrate that FTA considered the document, directly or indirectly, and (2) has failed to meet the standard for supplementing the record with this document.

### 3. Category 3: FTA Transportation Impacts document

The third category of documents that SSE seeks to add to the administrative record consists of Exhibit B to the Kraus Declaration, which is a document entitled "FTA Transportation Impacts" from FTA's website. Dkt. 73 at 11. At the hearing, SSE informed the Court that it has determined that this document is already included in the administrative record and that SSE was withdrawing its request with regard to Category 3.

### 4. Category 4: Policy documents and presentations from FTA, BART, Joint Powers Board, and VTA

The fourth category of documents that SSE seeks to add to the administrative record consists of Exhibits C through E, G, H, Q, S, JJ, and KK to the Kraus Declaration, which are "Policy Documents and Presentations from FTA, BART, Joint Powers Board and VTA." Dkt. 73 at 11-12. SSE states that "[t]hese document demonstrate the internal agency decision-making process, that parking as addressed in the SEIS/SEIR is pretextual and explains [sic] the prior scientific parking analysis and studies, it shows [sic] the importance of the issue of parking at Diridon as a large multimodal station and is evidence of improper behavior and bad faith by the agency." Dkt. 73 at 11-12.

SSE has not presented any evidence suggesting that these documents were considered, directly or indirectly, by FTA in development of the SEIS/SEIR or ROD. The assorted documents within Category 4 range from a Rotary Club presentation by VTA (Exhibit D) to a third-party parking study (Exhibit E). Except for Exhibit C, all of the documents in Category 4 have VTA Bates stamps, which according to SSE at the hearing, means they were produced by VTA in the state proceedings. As discussed in connection with Category 1 above, the fact that these

documents were produced by VTA in connection with preparation of the administrative record in the state CEQA action does not establish that they were considered, directly or indirectly, by FTA or that they should be included in the administrative record in this case.

SSE's arguments regarding Category 4 are essentially that the documents are relevant to the issue of parking at Diridon. This is not the correct test. Because SSE had not demonstrated that the Category 4 documents meet the legal standards for completion or supplementation of the administrative record, SSE's motion with regard to Category 4 is DENIED.

### 5. Category 5: Deposition Testimony

Category 5 consists of Exhibits PP through SS to the Kraus Declaration, which are excerpts of the depositions of FTA and VTA personnel taken in this litigation. Dkt. 73 at 12. This information was not part of the record before the agency when making the decisions under review and thus SSE cannot demonstrate that FTA directly or indirectly considered the deposition testimony. Accordingly, SSE must meet the standard for supplementing the administrative record before this material may be added to the record in this case.

SSE argues that the deposition testimony falls within each of the four circumstances under which a court may consider extra-record evidence: (1) the testimony shows that the agency did not consider all relevant factors and failed to explain its decision; (2) the testimony "demonstrates that the email must be supplemented to the record and shows other documents that the agency relied upon but did not include in the original AR"; (3) the testimony assists the trier of fact in explaining complex subject matters; and (4) the testimony evidences agency bad faith and improper behavior. Dkt. 73 at 12; *see also City of Las Vegas*, 570 F.3d at 1116.

"Reviewing courts may admit evidence under [the first] exception only to help the court understand whether the agency complied with the APA's requirement that the agency's decision be neither arbitrary nor capricious … But reviewing courts may not look to this evidence as a basis for questioning the agency's scientific analyses or conclusions." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014) (citations omitted). To qualify for supplementation under this exception, SSE had to identify specifically how precise testimony it seeks to add is necessary to assess the integrity of the process. It made no such showing.

14

Although SSE makes bold conclusory allegations about how the deposition testimony bears on the merits of FTA's decision, it fails to demonstrate how specific deposition testimony goes to the integrity of the process. Accordingly, SSE fails to demonstrate that the record should be supplemented under the first exception discussed above.

Moreover, SSE's argument that the deposition testimony supports the addition of emails and other documents to the record pursuant to the second extra-record criterion discussed above does not warrant adding the testimony itself to the record. In other words, to the extent the deposition testimony supports SSE's argument that the documents in Categories 1 through 4 and 6 should be part of the administrative record, submitting the deposition testimony in support of its present motion to complete/supplement the administrative record has served that purpose and it is not necessary to include the deposition testimony in the record to be reviewed by the District Judge.

SSE also fails to demonstrate that the testimony concerns complex subject matters and would be of assistance to the District Judge in this case. Accordingly, supplementing the administrative record with deposition testimony is not warranted under the third criteria discussed above.

SSE focuses most of its argument in favor of supplementing the administrative record on the fourth criterion for supplementation of the administrative record, concerning agency bad faith and improper behavior. SSE argues that the evidence "supports, among other claims, claims of bias, failure to take a hard look and a failure of scientific integrity" and "go[es] to the point that the agency failed to take the requisite 'hard look,' and did so intentionally." Dkt. 73 at 13 (emphasis in original). However, because "inquiry into the mental processes of administrative decisionmakers is usually to be avoided … there must be a strong showing of bad faith or improper behavior before such inquiry may be made." *Overton Park,* 401 U.S. at 420. Extra-record evidence is not justified simply because a plaintiff "rais[es] the *specter* of improper motive and bad faith." *Winnemem Wintu Tribe,* 2014 WL 3689699, at *12 (citations omitted) (emphasis in original). SSE's proffered deposition excerpts fail to meet the requirement for a strong showing of bad faith or improper behavior. SSE's arguments amount to a contention that FTA's alleged

15

avoidance of the parking issue is itself evidence of bad faith. However, SSE fails to support its arguments with adequate evidence that the agency acted in bad faith for purposes of supplementing the record.

As such, SSE has failed to demonstrate that the deposition testimony should be added to the administrative record, and therefore SSE's motion is DENIED with respect to Category 5.

To the extent SSE suggests that the District Court has already determined that the depositions taken in this case should be part of the administrative record, that argument is inconsistent with the litigation record. Judge Koh's decision to permit SSE to take depositions was in the context of SSE's argument that the administrative record was incomplete. In the parties' October 2, 2018 Joint Case Management Conference Statement, SSE expressed a concern that the forthcoming administrative record would be incomplete, in which case "Plaintiff will propound focused discovery to determine what information was not included, and seek documents and testimony to complete the record." Dkt. 18 at 4. Following the October 10, 2018 case management conference, Judge Koh issued a Case Management Order that provided an opportunity for "Plaintiff to propound discovery (if necessary)" after receiving the administrative record from Defendants, with a deadline for Plaintiff to "file a motion to supplement the Administrative Record (if any)" to follow. Dkt. 20. Judge Koh later explained that when the issue arose at the initial case management conference "after the discussion and reviewing the case law, I had determined that I agreed with the plaintiff that discovery would be appropriate if the plaintiff believed the administrative record was not complete, and at that point the plaintiff could propound discovery to determine what information was not included." Dkt. 60-1 (transcript of August 21, 2019 further case management conference) at 22:2-8. Judge Koh referred to the decision in *Public Power Council v. Johnson*, in which the Ninth Circuit stated that "[s]ome courts have permitted discovery when those challenging agency action have contended the record was incomplete, in order to provide a record of all documents and materials directly or indirectly considered by the agency decision makers" and "there are compelling reasons to allow the discovery to proceed at this stage, reserving for the panel on the merits the ultimate determination of what should constitute the record before the court." 674 F.2d 791, 793-94 (9th Cir. 1982). In light of this

explanation, the Court understands that Judge Koh allowed SSE to take depositions to determine what information was omitted from the administrative record prepared by Defendants, with the ultimate determination of what should be included in the administrative record to be made in the context of a motion to complete/supplement the administrative record. Under this understanding, the depositions taken by SSE should not be made part of the administrative record unless SSE demonstrates that the criteria for supplementing the record have been met. As discussed above, the Court concludes that SSE has not made the necessary showing to supplement the administrative record with that deposition testimony.

### 6. Category 6: Studies referenced in SEIS/SEIR

In addition to the categories of documents identified above, SSE also seeks to have FTA complete the record with "studies referenced in the SEIS/SEIR but not attached to the appendix or made available." Dkt. 69-1 ¶ 47. SSE describes this category of documents as "including but not limited to, the 2015 VTA Travel Demand Model and the selected portions from the San Jose General Plan that relate to parking and the arguments made in the SEIS/SEIR that reference the San Jose General Plan and the project's consistency with that plan." *Id*.

Defendant construes SSE's request to add documents in this category as a request to supplement the record, which it opposes on the grounds that SSE's argument "is a merits argument" and "[i]f the Court finds, when examining the merits of this case, that FTA did not append to the environmental document information necessary for public review and the Court further finds that FTA violated NEPA by doing so, the remedy is remand to the agency for correction, not supplementation of the record for the present judicial review." Dkt. 71 at 11.

However, the Court understands SSE's argument with respect to Category 6 to be an argument to complete the record, not supplement it. *See* Dkt. 68-1 ¶ 47 ("SSE is also seeking to have FTA *complete the record* with studies referenced in the SEIS/SEIR but not attached to the appendix or made available."). The issue, then, is whether SSE has demonstrated that FTA directly or indirectly considered that information in preparing the SEIS/SEIR.

Addressing the two specific studies identified by SSE—portions of the San Jose General Plan and the 2015 VTA Travel Demand Model—SSE has submitted deposition testimony from

17

FTA witness Mary Nguyen that she looked at "the City of San Jose's general plan requirements for parking." Dkt. 68-6 at 184:14-16. This is evidence that FTA considered portions of the San Jose General Plan, either directly or indirectly. Accordingly, the Court ORDERS Defendant to include portions of the San Jose General Plan that include "requirements for parking" in the administrative record. The Court ORDERS the parties to meet and confer to reach agreement on which specific portions of the San Jose General Plan are to be included.

The record is not clear with respect to SSE's request to include the 2015 VTA Travel Demand Model. Although that particular model was SSE's focus at the hearing, SSE's motion refers more generally to "[t]he Travel Demand Model," as well as "[t]he Parking Demand Model runs." Dkt. 68 at 14-15. SSE has not made it clear whether these references relate to the same document or different documents. Additionally, SSE has presented some deposition testimony from VTA witnesses concerning travel demand model runs and their use in the SEIS/SEIR. *See, e.g.,* Dkt. 68-9 at 106:8-108:7. However, this testimony, standing alone, does not establish that FTA considered, directly or indirectly, the 2015 Travel Demand Model. The Court ORDERS the parties to meet and confer, using the guidelines set forth below, to reach agreement on which, if any, travel demand models are to be included in the administrative record. In addition, the parties' meet and confer should include any other reports or studies within the scope of Category 6 that SSE did not specifically identify in its motion papers.

To guide the parties' discussions, the Court advises that to the extent the SEIS/SEIR specifically cites to a study or report, that is sufficient evidence that the FTA considered, directly or indirectly, that document in developing the SEIS/SEIR, and the document should be included in the administrative record. Items referenced in a more attenuated fashion need not be included absent evidence that FTA considered such documents directly or indirectly. *See generally Southeast Alaska Conservation Council*, 2007 WL 2988013, at *5 (holding that letters sent by plaintiffs to defendants should be added to record, but study to which those letters referred should not be added when only the title page of the study was included in plaintiffs' letters).

### III. CONCLUSION

For the reasons discussed above, the Court ORDERS as follows:

1. The parties must promptly meet and confer in good faith, using the guidance provided in this order, to reach agreement on whether items from Category 6 should be added to the administrative record. The Court expects the parties to reach agreement on these issues; however, any remaining dispute must be presented to the undersigned in a joint letter brief filed no later than **noon on February 7, 2020**. The letter brief should include a table with columns for (1) each disputed item; (2) a brief statement of Plaintiff's position on each disputed item; (3) a brief statement of Defendants' position on each disputed item; and (4) a blank column for the Court's ruling on each disputed item. Counsel for the parties must ensure that they are available on **February 10, 2020 at 10:30 a.m**. for a telephonic hearing, if necessary, to discuss any remaining dispute.

2. No later than **February 17, 2020**, Defendants must complete the administrative record with any documents that are added as a result of the parties' agreement or the Court's order following the process set forth in the preceding paragraph.

3. SSE has WITHDRAWN its request to include the Category 3 document (i.e., Exhibit B to the Kraus Declaration) in the administrative record.

4. Except as set forth above, the Court DENIES SSE's request to include documents in the Administrative Record.

5. Defendants have not argued that any of the materials that are the subject of Plaintiff's motion are privileged. If, however, Defendants withhold any documents from the administrative record on the basis of privilege, they must also provide a privilege log by **February 17, 2020**.

**SO ORDERED.**

Dated: January 31, 2020

SUSAN VAN KEULEN
United States Magistrate Judge